UNITE STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CASSANDRA M. PAYNE,<br>2300 Good Hope Road, SE Apt 704<br>Washington, D.C. 20020<br><br>    Plaintiff,<br><br>v.<br><br>DIRK KEMPTHORNE, SECRETARY<br>DEPARTMENT OF THE INTERIOR<br>1849 C Street, NW<br>Washington, DC 20240<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 08-164<br>)<br>)  Jury Trial Demand<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Cassandra Payne, by and through counsel, sues Defendant Dirk Kempthorne, Secretary, Department of the Interior, and for her first amended complaint states as follows.

This is an action by Cassandra Payne, an employee of the Department of the Interior, subjected to unlawful retaliation after she engaged in protected EEO activity.

## JURISDICTION AND VENUE

1.      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq.  Jurisdiction is founded on 42 U.S.C. Section 2000, et seq., 28 U.S.C. Sections 1331 and 1343(3) and (4).  The Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. Sections 2201 and 2202.

2. Venue is proper in this court pursuant to 28 U.S.C. Section 1391(b) in that all or some events or omissions giving rise to Payne's claims occurred in this judicial district and Defendant may be found in this judicial district.

### FACTS

3. Plaintiff Cassandra Payne is employed as a Maintenance Worker, WG-6, at the Department of Interior. Ms. Payne began employment at the Department of Interior in 1978. She began employment at Rock Creek Park in Washington, D.C. in April 1984. From 1984 until June 2000, she worked as a tractor operator and worked from 7:00 am to 3:00 p.m., Monday through Friday. In 2000, Ms. Payne suffered a near fatal allergic reaction to a bee sting while at work. She returned to work but she was removed from all outside duties.

4. In June 2004, Ms. Payne was assigned duties at the Rock Creek Nature Center. Ms. Payne was never given a job description, but was told her job included cleaning the building. She reported to Dwight Madison, an African American male.

5. Ms. Payne is a Christian. Prior to her return to work, she was able to attend church on Sunday and Bible Study. In June 2000, Ms. Payne requested weekend leave so that she could attend a bible college in Washington, D.C. on Saturdays and attend church services on Sundays.

6. She first made this request to her supervisor, Dwight Madison. When she would ask her supervisor, Dwight Madison, if she could have Saturdays and Sundays off, he would tell her no. Madison stated that Cindy Cox, Assistant Superintendent, and Superintendent Adrienne Coleman told him that she could not be allowed to have the

weekends off because all front line interpretive staff assigned to the Nature Center or other public sites, including Ms. Payne, work Wednesday through Sunday.

7. In September 2002 and January 2003, Ms. Payne approached Madison and requested Saturdays and Sundays off. Madison told her that she could not be trusted in the building alone. Ms. Payne knew this was not true because she would often set the alarm and lock the building at the end of the day.

8. On April 2, 2003, Ms. Payne was out from work on worker's compensation due to an on-the-job back injury. She returned to work on December 31, 2003. When she returned to work, she was told by Lora Williams and Dan Winnings that ranger Anne O'Neil was granted time off for the weekends to spend more time with her new born child.

9. In January 2004, Ms. Payne approached Madison again for Sundays off, and he again refused her request and stated to her that the Agency would never give her weekends off because the Agency was trying to fire her. He then told Ms. Payne to stop asking for time off to go to church service. When Ms. Payne asked for a copy of her position description, Madison refused. At that point, Ms. Payne went to the Public Relations office to request a meeting with Mr. Ken Brodie, Public Relations Specialist, to discuss her treatment at the nature center.

10. In May 2004, Ms. Payne complained to Joy Harris, EEO counselor, about not being able to have the weekends off to attend religious services. Ms. Harris told Ms. Payne to go back to her supervisor and ask for Sundays off. Ms. Payne went back to Madison, and once again, he refused to allow her to have the weekends off to attend

church services. Ms. Payne then requested a meeting with her supervisor and Laura Illige to discuss her request.

11.     On May 28, 2004, Ms. Payne met with Madison, Newman and other Agency managers and complained about the denial of leave for religious purposes. Ms. Payne filed an EEO complaint in September 2004.

12.     After filing the EEO complaint, Ms. Payne was subjected to a hostile work environment and retaliation by Agency managers. Dwight Madison began preparing a work schedule for Payne to follow, which ordered Ms. Payne to perform specific duties each minute of her work day. Prior to filing the EEO complaint, she was permitted to organize her own day and perform duties as she deemed necessary, as long as all duties were performed. Madison did not issue a specific work schedule to any of the other employees in the nature center that he supervised. Before Ms. Payne filed the EEO complaint, she was allowed to eat her breakfast with the other employees before beginning work at 9:00 a.m. Immediately after Ms. Payne filed the EEO complaint, Madison no longer allowed her to eat her breakfast before she started work with the other employees and required her to begin work at 8:45 a.m., while everyone ate their breakfast and started work at 9:00 am.

13.     In addition, Madison began monitoring her movement as far as the work schedule was concerned. When she was late for work, he would make her sign a leave slip, but when her co-workers were late, such as Susan Kennedy, he did not require them to sign a leave slip. Madison required Ms. Payne to get on her hands and knees to scrub the floor, even though he knew she had a cracked disc in her back. Madison also forced her to go up and down a step ladder to wash vertical blinds even though she was overweight due to

4

depression from the treatment she received at the Agency. Ms. Payne gained over 100 pounds from the time she began working at the Agency.

14. On September 16, 2004, Ms. Payne approached Madison with a leave slip because there was a day open on the calendar. He would not immediately approve her request but told her he would see what he could do. Immediately after he denied her leave, Lora Williams, a co-worker, asked him if she could leave to be with her boyfriend. Madison gave Lora Williams and himself the day off, even though Ms. Payne had requested that day. Madison also issued Ms. Payne a negative performance appraisal after she filed her EEO complaint.

15. Later in September 2004, Ms. Payne asked Madison why she was being treated differently than other employees. Madison told Ms. Payne that it was none of her business. Ms. Payne told Madison that she was going to inform Alberta Newman about the incident. He replied that he did not care who she told, while making mocking gestures and laughing at her.

16. After Ms. Payne left, she called Alberta Newman and told her that she was stressed from the incident. Ms. Payne also told her that the stress required that she leave for the day. Shortly after this incident, Ms. Payne was under a tremendous amount of stress and her back collapsed and she fell to the floor. Madison and Laura Illige were present when Ms. Payne collapsed. Ms. Payne asked Madison and Illige to call 911, and both did not respond. They just stared at her. Ms. Payne repeatedly asked them to call 911 and they refused. Ms. Payne told them that she was having an asthma attack and asked one of them would get her inhaler. Laura Illige finally got up to get the inhaler, but by that time, Ms. Payne had begun to vomit and wheeze. At that point, Illige finally

called 911. Madison's treatment of Ms. Payne caused her to experience severe pain in her back and required major back surgery and leave from work for three years.

17. Ms. Payne's EEO complaint proceeded to the EEOC, and an administrative judge issued a decision finding that the Agency discriminated against Ms. Payne based on religion but found that the Agency did not retaliate against Ms. Payne.

18. In October 2007, the administrative judge entered an order of damages against the Agency. The Agency paid the damages award in December 2007.

19. In January 2008, Ms. Payne was cleared by her doctor to return to work in a light duty capacity. Ms. Payne was initially told that there was light duty work for her at the Agency. Upon information and belief, other employees who had medical restrictions, who did not have prior EEO complaints were given light duty assignments. When Ms. Payne reported to the Human Resources office, she was told that her previous department would not permit her to work in a light duty position, and there were no light duty positions elsewhere in the Agency where she could work.

## COUNT I

**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. Section 2000e-3(a)**
**Discrimination and Retaliation**

Plaintiff realleges and incorporates the allegations of all paragraphs above as if fully set forth in Count I.

18. Plaintiff was affected in a "term, condition and privilege" of employment as envisioned by 42 U.S.C. Section 2000e-2(a)(1) in that Defendant retaliated against Plaintiff for filing an EEO claim.

19.     At all pertinent times, Defendant was an employer subject to the provisions of 42 U.S.C. Section 2000e et seq.

20.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII.

21.     Title VII prohibits discrimination in employment and retaliation for engaging in protected EEO activity.

22.     In violation of Title VII, Defendant was aware of Plaintiff's prior protected activity, subjected her to a hostile work environment by permitting Madison to harass her and impose unreasonable working conditions, and refused to provide medical attention when she suffered an asthma attack at work, altered the terms and conditions of her employment, issued her a lower performance appraisal, and knowingly and intentionally retaliated against Plaintiff by denying Plaintiff a light duty position.

WHEREFORE, Plaintiff requests that the Court will:

   A.    Issue a declaratory judgment that Defendant's practices toward Plaintiff are in violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq.

   B.    Enjoin Defendant from retaliating against employees who file EEO complaints under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq.

   C.    Grant Plaintiff judgment for compensatory damages against Defendant.

   D.    Grant Plaintiff his costs and a reasonable award of attorneys fees pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C Section 2000e-5(k), and all applicable statutes.

                Respectfully submitted,

                */s/ David A. Branch*

                David A. Branch #438764
                Law Offices of David A. Branch, PC
                1825 Connecticut Avenue, N.W.
                Suite 690
                Washington, D.C.  20009
                (202) 785-2805 phone
                (202) 785-0289 fax

## **JURY DEMAND**

Plaintiff demands a jury trial on all counts.