UNITE STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CASSANDRA M. PAYNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-164 |
| ) | |
| DIRK KEMPTHORNE, SECRETARY ) | Jury Trial Demand |
| DEPARTMENT OF THE INTERIOR ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGHMENT

Comes Now Plaintiff Cassandra Payne, by and through counsel, and files this opposition to Defendant's motion for summary judgment and in support thereof states as follows.

### I.   INTRODUCTION

This is a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*("Title VII").  Ms. Payne is a Christian.  She was employed by the Agency as a maintenance worker.  She alleged that after she made a formal request in January 2004, to have Sundays off to attend church services, the Agency retaliated against her when: 1) Ms. Payne was told repeatedly by her supervisor that the Agency would never give her Sundays off because the Agency was trying to get rid of her or terminate her (Ex. A: 22, 23, 38, 39); 2) Ms. Payne's supervisor angrily confronted her and told her that the one thing he did not like was "a lying ass Christian woman" "(Ex. A 40:11-21); 3) the Agency changed her duties from a mixture of

interpretative duties and maintenance duties to solely maintenance duties (compare Ex. B 19—1of 10 to 2 through 9 of 10); 4) the Agency required to account for every minute of her work day and assigned her duties for each minute of the work day when prior to requesting religious accommodation Ms. Payne was just given a list of tasks to be completed each day (compare Ex. B 19—1of 10 to 2 through 9 of 10);  5) Ms. Payne's supervisor required her to get on her hands and knees and scrub wax off the Agency floors; (Ex. A 52:2-20); 6) Ms. Payne's supervisor required her to claim a ladder with a bucket and wash each blind in offices at the Agency with Venetian blinds with a wet towel every day (Ex. A 53:15-22, 54: 1-15), even though she was 100 pounds overweight, Amen. Comp. p. 13; 7) Ms. Payne's supervisors refused to call 911 when her back went out and she had an asthma attack at work (Ex. A 46-49, 54:16-22; 101 and 102); and 8) the heavy work load imposed upon Ms. Payne and mistreatment resulted in permanent injury to her back, which ultimately required back surgery and a worker's compensation injury.

      Defendant has moved for summary judgment on all counts pursuant to Fed. R. Civ. P. 56.  In its Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Def. Mem."), Defendant asserts that it is entitled to judgment as a matter of law for several reasons.  First, Defendant claims Plaintiff has recovered for her discrimination claim and cannot do so again.  Next, Defendant argues that Ms. Payne failed to exhaust her hostile work environment claim and she was not subjected to a hostile work environment.  Finally, Defendant argues that Ms. Payne was not retaliated against because the materially adverse actions she complains about happened before she sought counseling.  Defendant's motion is without merit because Ms. Payne is not

pursing a claim for discrimination; however, Ms. Payne has established that she was subjected to retaliation. Her formal requests for religious accommodation beginning in January 2004 were protected activity, and after she filed a claim with an EEO counselor, the Agency took the actions in items 4 through 7 above against Ms. Payne.

## II.   FACTS

Plaintiff Cassandra Payne was employed as a Maintenance Worker, WG-6, at the Department of Interior and began employment at the Department of Interior in 1978. Ex. A 8:18-22. She began employment at Rock Creek Park in Washington, D.C. in April 1984. From 1984 until June 2000, she worked as a tractor operator and worked from 7:00 am to 3:00 p.m., Monday through Friday. In 2000, Ms. Payne suffered a near fatal allergic reaction to a bee sting while at work, and when she returned to work but she was removed from all outside duties and placed at the Rock Creek Nature Center as a maintenance worker, reporting to Dwight Madison, a Caucasian male. Ex. A 10:8-19; 11. At this point, Ms. Payne's work hours were 8:45 am to 5:15 pm, Wednesday through Sunday. Ex. A 12:5-9.

Ms. Payne is a Christian and prior to her return to work, she was able to attend church on Sunday and bible college on Saturday. Ex. A 12-14. In June 2000, Ms. Payne requested weekend leave so that she could attend a bible college in Washington, D.C. on Saturdays and attend church services on Sundays. Id.

She first made this request to her supervisor, Dwight Madison, in 2000 when she began working in the Nature Center. Ex. A 14:21-15:4-10. When she would ask her supervisor, Dwight Madison, if she could have Saturdays and Sundays off, he would tell her no and "it was a waste of time" to make the request. Ex. A: 21-22.

In September 2002 and January 2003, Ms. Payne approached Madison and requested Saturdays and Sundays off.  Ex. A 22:13-22. Madison responded, "No, they are not going to let you do that, Sandy.  They don't like you; they are trying to get rid of you.  You are not going to get what you are asking for.  So, you know, I don't know why you keep coming back, asking the same thing." Ex. A 23: 1-10.

On April 2, 2003, Ms. Payne was out from work on worker's compensation due to an on-the-job back injury and  returned to work on December 31, 2003.  Ex. A 25-27.

In January 2004, Ms. Payne wrote a letter to Chief Ranger Laura Illige, requesting Saturdays and Sundays off.  Ex. A 31:10-22; Ex. B 2--27 of 36.   Ms. Payne specifically stated in the letter, "I would like to request that my work schedule on Sundays be more flexible so I may exercise my religious observance." Ex. B 2-27 of 36.  She requested to come to work at 2 pm after church service or use her leave and take off two Sundays each month.  Id. Ms. Payne did not receive a response to her letter until May 2004.  Ex. B 2-33 of 36.  Ms. Payne's request was denied.  Ex. A 34-35, and she was informed that her request would be treated the same as any other leave request.  Id.

 In May 2004, Ms. Payne complained to Joy Harris, EEO counselor, about not being able to have the weekends off to attend religious services. Ex. A 38.  After this complaint, Ms. Payne agreed to Agency's alternative dispute resolution program with Madison the denial of her request for a religious accommodation and other mistreatment by Madison.  Ex. A. 39.  Ms. Payne recalled that Madison would make Christian jokes to humiliate her.  On one occasion, she made plans to go to dinner with co-workers, and no one showed up. Ex. A 39-40.  No one showed up for dinner and she questioned her co-workers the following day.  Id. Madison was present and stated to Ms. Payne, "[o]ne

4

thing I don't like is a lying ass Christian woman." Ex. A 40:11-21. On another occasion, Ms. Payne was wearing a sweatshirt with the name of her Bible College, Gibbons Bible College and acronym GBC, and Madison asked what does GBC mean, and then he responded, "God's bad servant," and then he and all others there laughed. Ex. A 43 1-10.

After her complaint in May 2004, Madison and Illige changed her job duties. Ex. A 51:19-22. Previously she was given a list of duties that she had to complete in one day, Ex. B-19 1 of 10. After her complaint in May 2004, she was given specific tasks which accounted for every minute of her work day. Ex. A 52:2-11; Ex. B-19: 4 through 10 of 10 (October 2004 schedule). In addition, Madison told Ms. Payne that she had to get on her hands and knees and scrub wax off the Agency's floors, even though he knew she had just returned from a back injury and could not safely get down on the floor to scrub the floor. Ex. A 52:2-20. Madison required Ms. Payne to climb a ladder with a bucket and a rag each day and wash each single venetian blind, even though she was 100 pounds overweight. Ex. A. 53:15-22, 54: 1-15; Amended Comp. at p.13. As a result of this work, Ms. Payne had to go to Kaiser and receive an injection for back pain because her back went out. Ex. A 54:16-22. Ms. Payne did as she was ordered to do by Madison even though it was physically painful, and she believed it was demeaning and embarrassing to her. Ex. A 64:4-18.

In September 2004, Ms. Payne was at work and her back "went out" while she was talking to Chief Illige about Madison, and Ms. Payne exclaimed, "Lord, my back is out. I need you to call 911." Ex. A 48: 2-22. Illige ignored her request and continued with the meeting. Ex. A 46-49, 101 and 102. At that point, Ms. Payne had an asthma attack, and Illige and Madison, "sat there watching [her]." Id. Ms. Payne began to

5

vomit and pointed to the trash can, and Illige finally gave her the trash can and Ms. Payne threw up. Ms. Payne then notified Illige that she needed her aspirator. Id. The aspirator was retrieved but when it did not work, Ms. Payne told Illige and Madison that she needed them to call 911. Id. Madison finally left the room and went to another room to call 911 and the ambulance came and took her to the hospital. Ex. A 49: 1-11.

## III.  STATEMENT OF DISPUTED MATERIAL FACTS

Ms. Payne asserts the following material facts asserted by Defendant remain in dispute.[1] In addition, Plaintiff Payne has submitted her own statement of facts because Defendant's Statement of Material Facts, largely ignore the facts.

1. Ms. Payne disputes that she received worker's compensation from April 2002 until December 31, 2003. Ms. Payne was on worker's compensation from April 2003 until December 2003. Ex. A 25-27  Ms. Payne does not dispute that she has been receiving workman's compensation since 2004, but states that the Agency's discriminatory conduct contributed to her injury. Ex. A 46-49.

2. Ms. Payne disputes that May 2004 was the first instance that she claimed the agency was discriminating against her by not accommodating her religious beliefs. Ms. Payne engaged in protected activity when she made a formal request for religious accommodation in January 2004, and protested discriminatory treatment from her supervisors from January 2004 through September. Ex. B 2-27 of 36, and 31 through 34 of 36.

3. Ms. Payne disputes  that her September 3, 2004 complaint was the only formal complaint against Defendant. Ex. B 2-27 of 36, and 31 through 34 of 36. Ms. Payne

---

[1] Numbered paragraphs correspond to those in Defendant's Statement of Material Facts Not in Genuine Dispute. ("Def. Stmt.").

6

alleged that she was subjected to retaliation for engaging in protected activity when she requested a religious accommodation and for filing an EEO complaint, when she was harassed by management.    Ex. B 2--27 of 36, and 31 through 34 of 36.

## IV.    ARGUMENT

### A.    Standard for Summary Judgment

The Court will grant summary judgment if there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial responsibility of informing the Court of the basis for summary judgment lies with the moving party. See Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). Once a motion for summary judgment is made and supported, the nonmoving party "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B.    Ms. Payne has raised a genuine issue as to whether she was retaliated against for requesting religious accommodation.

#### 1.    Ms. Payne engaged in protected activity.

Defendant argues that Ms. Payne did not engage in protected activity until she filed a formal EEO complaint in September 2004, or at the earliest, when she contacted an EEO counselor in May 2004.

Ms. Payne's EEO activity began in January 2004, when she submitted a formal request for the Agency to accommodate her religious practices and permit her to take Sundays off to attend church and observe her sabbath.  Ex. B 2—27 of 26. The EEOC

7

Compliance Manual, Section 8, "Retaliation," May 20, 1998, states that requests for religious accommodation and for disability accommodation are protected activity. Some federal courts have assumed that requests for religious accommodation are protected activity. See e.g. Richardson v. Dougherty County, Ga., 2006 WL 1526064 (11th Cir. June 5, 2006) (district court found request for accommodation one year before adverse employment action was insufficiently close in time, and Court of Appeals affirmed on alternative grounds); Virts v. Consol. Freightways Corp of Delaware, 285 F.3d 508 (6th cir. 2002) (employer conceded prima facie case of retaliation in religious accommodation case where plaintiff's refusal to work without accommodation was deemed a voluntary resignation by management). At least one appellate court has upheld a jury verdict finding that an employee's complaints about required participation in activities which violate his religious beliefs constituted protected activity under Title VII. See Ollis v. HearthStone, 495 F.3d 570 (8th Cir. 2007).

After Ms. Payne engaged in protected activity by making a formal request for religious accommodation, the Agency retaliated against her. It is undisputed that after January 2004 and before May 2004, Ms. Payne was told repeatedly by her supervisor, Madison, that the Agency would never accommodate her religious beliefs and in fact the agency was attempting to get rid of her. Ex. A 38-39. This continued with mocking her religion and telling her she was God's bad servant and Madison telling Ms. Payne that one thing he did not like was a "lying ass Christian woman." Ex. A 40:11-12.

Even assuming, as the Agency contends, that Ms. Payne engaged in protected activity in May 2004, she was subjected to actionable retaliation after May 2004. Between May and September 2004, the Agency changed her duties from a mixture of

interpretative duties and maintenance duties to solely maintenance duties (compare Ex. B 19—1of 10 to 2 through 9 of 10); Madison yelled at her and mocked her and got in her face, and the Agency required her to work while other staff was permitted to eat breakfast at the beginning of the work day, and the Agency required her to complete a leave slip if she arrived late but did not require other staff to do so (Ex. A 41-44); the Agency required Ms. Payne alone to account for every minute of her work day and assigned her duties for each minute of the work day when prior to requesting religious accommodation Ms. Payne was just given a list of tasks to be completed each day (compare Ex. B 19—1of 10 to 2 through 9 of 10); Ms. Payne's supervisor required her to get on her hands and knees and scrub wax off the Agency floors; (Ex. A 52:2-20); Ms. Payne's supervisor required her to claim a ladder with a bucket and wash each blind in offices at the Agency with Venetian blinds with a wet towel every day (Ex. A 53:15-22, 54: 1-15); and Ms. Payne's supervisors refused to call 911 when her back went out and she had an asthma attack at work (Ex. A 46-49, 54:16-22; 101 and 102).

In a retaliation claim under Title VII, the Supreme Court has made it clear that the standard is whether the employer has engaged in the type of action that would dissuade a reasonable worker from making or supporting a charge of discrimination. <u>Burlington Northern & Santa Fe Railway v. White</u>, 548 U.S. 53, 68 (2006).

While Defendant minimizes the treatment Ms. Payne was subjected to by characterizing it as simply requiring Ms. Payne do more work, having Ms. Payne work later, and having her get on her hands and knees to clean the floors and getting on a ladder to clean the blinds, the record establishes that she was subjected to inhumane

9

treatment and conduct that would dissuade a reasonable worker from exercising their rights under Title VII.

### 3. There is a causal relationship between Ms. Payne's protected activity and the harassment.

There is no dispute that there is a causal relationship between Ms. Payne's protected activity and the harassment because the harassing supervisor told Ms. Payne that the Agency's motives were to get rid of her.  Madison told Ms. Payne that the Agency would never allow her to have Sunday off to attend church because the Agency wanted to get rid of her; called her a "lying ass Christian woman" and "God's bad servant."  Madison thereafter humiliated Ms. Payne by requiring her to get on her hands and knees and scrub the floors, and climb a ladder with a bucket of water and rag and wash each venetian blind, in the office, one by one.  Finally, Madison and Illige threatened Ms. Payne's life when they did not immediately call 911 when her back went out and she suffered an asthma attack.   All of these incidents occurred after she requested a religious accommodation and later complained to an EEO counselor.

Ms. Payne has established all elements for her retaliation claim and the Agency has not even attempted to offer a legitimate reason for its actions.  There is overwhelming evidence that the Agency retaliated against Ms. Payne.

## V. CONCLUSION

For the reasons stated above, Plaintiff Cassandra Payne respectfully requests that the Court deny Defendant's Motion for Summary Judgment on all counts.

        Respectfully submitted,

        */s/ David A. Branch*

        David A. Branch #438764
        David A. Branch and Associates, PLLC
        1901 Pennsylvania Avenue, N.W.
        Suite 802
        Washington, D.C.  20009
        (202) 785-2805 phone
        (202) 785-0289 fax

### **Certificate of Service**

I hereby certify this 31st day of October 2011 that a copy of the foregoing Opposition to Motion for Summary Judgment was sent via electronic mail to counsel for the Defendant at the address listed below:

Christian Natiello
AUSA
555 Fourth Street, NW
Room E4112
Washington, DC 20530

        /s/
        _____

        David A. Branch