# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**CASSANDRA M. PAYNE**,

       Plaintiff,

    v.

**KEN SALAZAR**, Secretary, U.S. Department of the Interior

       Defendant.

Civil Action No. 1:08-00164 (CKK)

## MEMORANDUM OPINION
(October 21, 2012)

Plaintiff Cassandra Payne ("Plaintiff"), an employee of the Department of the Interior, commenced this action against Defendant Ken Salazar[1] in his official capacity as Secretary of the Department of the Interior ("Defendant"), alleging two claims of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  When presented with a motion to dismiss earlier in these proceedings, this Court dismissed the action in its entirety. *Payne v. Salazar*, 628 F. Supp. 2d 42, 52 (D.D.C. 2009), *aff'd in part, rev'd in part* 619 F.3d 56 (D.C. Cir. 2010).  Subsequently, the United States Court of Appeals for the District of Columbia Circuit affirmed this Court's decision in part and reversed in part, remanding the action for further proceedings on Plaintiff's first retaliation claim – that in 2004, Defendant retaliated against her for filing a charge of religious discrimination with Defendant's Equal Employment Opportunity (EEO) Office.  *Payne*, 619 F.3d 56.  Specifically, Plaintiff's Amended Complaint alleges that Defendant retaliated against her by, *inter alia*, changing her work duties, giving her a

---

[1] Secretary Salazar is automatically substituted for Dirk Kempthorne, pursuant to Federal Rule of Civil Procedure 25(d).

minute-by-minute work schedule, and engaging in various harassing conduct such as insulting her, requiring her to get on her hands and knees to scrub the floor and to climb a step ladder to wash vertical blinds, and refusing to retrieve her inhaler or call 911 when she suffered an asthma attack at work.  Am. Compl. ¶¶ 12–16, 22.  Currently pending before the Court is Defendant's [29] Motion for Summary Judgment.  Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole,[2] the Court finds that Defendant has failed to demonstrate the absence of genuine disputes of material fact going to Plaintiff's retaliation claim. Accordingly, this Court shall DENY Defendant's [29] Motion for Summary Judgment.

## I.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that she] ... is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Id*.  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

---

[2] While the Court renders its decision today on the record as a whole, its consideration has focused specifically on the following documents, listed in chronological order of their filing: Pl.'s First Am. Compl., ECF No. [8] ("Am. Compl."); Def.'s Answer to First Am. Compl., ECF No. [23] ("Ans."); Def's Stmt. of Material Facts Not in Genuine Dispute ("Def.'s Stmt."), ECF No. [29], at 2–3; Def's Mem. of P. & A. in Supp. of His Mot. for Summ. J. ("Def.'s Mem."), ECF No. [29], at 4–16; Pl.'s Opp'n. to Def.'s Mot. for Summ. J., ECF [30] ("Pl.'s Opp'n"); Pl's. Statement of Disputed Material Facts ("Pl.'s Stmt."), ECF [30], at 6–7; Def.'s Reply Mem. in Further Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply"), ECF No. [32].

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of her position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. FED. R. CIV. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants–CWA, AFL–CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

3

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*). Be that as it may, the plaintiff is not relieved of her burden to support her allegations with competent evidence. *Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009). As in any context, where the plaintiff would bear the burden of proof on a dispositive issue at trial, then at the summary judgment stage she bears the burden of production to designate specific facts showing that there exists a genuine dispute requiring trial. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

## II. BACKGROUND

The Court begins its discussion of the facts by noting that this Court strictly adheres to the text of Local Civil Rule 7(h)(1), which requires that a party submitting a motion for summary judgment attach a statement of material facts as to which that party contends there is no genuine issue, with specific citations to those portions of the record upon which the party relies in fashioning the statement. *See* LCvR 7(h)(1). The party opposing such a motion must, in turn, submit a statement of genuine issues enumerating all material facts which the party contends are at issue and thus require litigation. *See id*. Where the opposing party fails to discharge this obligation, a court may take all facts alleged by the movant as admitted. *Id*. As the District of Columbia Circuit has emphasized, "[Local Civil Rule 7(h)(1)] places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citing *Twist v.*

*Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).   Here, although both parties submitted the required statements, the statements, each comprising only four numbered paragraphs, are sparse and largely unhelpful to the Court in setting forth the required background.   Indeed, certain key facts discussed by both parties in their briefing –   for example, facts going to the timing of Defendant's alleged retaliatory conduct – are nowhere to be found.   Accordingly, contrary to its preferred practice, the Court shall in some instances cite directly to the exhibits on which the parties rely in their briefing rather than to their statements of material facts.[3]

Plaintiff began working for Defendant, at the Department of the Interior, in a temporary capacity beginning in 1978.  Def.'s Stmt. ¶ 1.  Plaintiff became a permanent employee in 1984, as a tractor operator at Rock Creek Park in Washington, D.C., where she worked Monday through Friday.  *Id.  See also* Am. Compl. ¶ 3.  According to Plaintiff, in June 2000, she suffered a nearly fatal allergic reaction to a bee sting while at work.  Am. Compl. ¶ 3; Pl.'s Opp'n at 3 (citing Ex. A (EEOC Hearing Transcript), at 10–11).  Upon her return shortly thereafter, Plaintiff was reassigned to work indoors as a maintenance worker Wednesday through Sunday at the

---

[3] The Court further notes that Plaintiff's responses to Defendant's statement of facts fails entirely to conform with the [28] Scheduling and Procedures Order issued in this case.  First, Plaintiff's responses are incorporated as a separate section within Plaintiff's opposition brief, as opposed to in a separate statement.  Second, although Plaintiff's responses to Defendant's statement are set forth in numbered paragraphs corresponding to Defendant's statement, Plaintiff's presentation of additional facts are not presented in "consecutively numbered paragraphs at the end of [her] responsive statement of facts."  Scheduling and Procedures Order (July 29, 2011), ECF No. [28].  Plaintiff's failure to present her statement in this way has made it more difficult for the Court to determine which facts are in dispute.  Nonetheless, Plaintiff's statement of facts does, in its own way, "set[] forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated" with "references to the parts of the record relied on." LCvR 7(h).  To the extent Plaintiff's statement fails to contest facts stated in Defendant's statement of facts, the Court will "assume that the facts identified by the [defendant] in [his] statement of material facts are admitted." *Id.*

Rock Creek Nature Center.[4]  Am. Compl. ¶¶ 3–5; Ans. ¶¶ 3–5; Pl.'s Opp'n at 3 (citing Ex. A (EEOC Hearing Transcript), at 10–11).  In response to the change in her work schedule, Plaintiff asked her supervisor, Dwight Madison, if she could take weekend leave so that she could attend a Bible college on Saturdays and church services on Sundays, but her request was denied.  Am. Compl. ¶¶ 5–6; Ans. ¶ 5; Pl.'s Opp'n at 3 (citing Ex. A (EEOC Hearing Transcript), at 12–15).

In January 2004, Plaintiff wrote a letter to Laura Illige, Chief Ranger of Rock Creek Park, requesting greater flexibility in her work schedule on Sundays to permit her to "exercise her religious observance."  Pl.'s Opp'n, Ex. B (Selected EEOC Record Exhibits), at 76–77.  *See also* Def.'s Mem. at 4.  The record reflects, and Defendant nowhere disputes, that Plaintiff did not receive a response to this letter until May 2004, at which point her request was denied.  Pl.'s Opp'n at 4 (citing Ex. B (Selected EEOC Record Exhibits), at 82).  On May 10, 2004, Plaintiff sought informal counseling from Joy Harris, an EEO counselor, to whom she complained that Defendant was discriminating against her by not accommodating her religious beliefs.  Def.'s Stmt. ¶ 2; Pl.'s Opp'n at 4 (citing Ex. A (EEOC Hearing Transcript), at 38)).  It was around this time, Plaintiff alleges, when Defendant's retaliatory conduct against her began – including, as set forth in greater detail below, harassing remarks, a change in duties, the imposition of unreasonable working conditions, and refusal to provide medical attention when she suffered an asthma attack at work.  *See* Am. Compl. ¶ 22; Pl.'s Opp'n, at 4–5.  To the contrary, Defendant contends that the alleged conduct about which Plaintiff complains, by Plaintiff's own

---

[4] Plaintiff states in paragraph 4 of her First Amended Complaint that she was assigned to the Rock Creek Nature Center in June of 2004.  *See* Am. Compl. ¶ 4.  This appears, however, to be a typographical error, as it is evident from the context of the surrounding statements, as well as from Plaintiff's opposition brief on the instant motion, *see* Pl.'s Opp'n at 3, that Plaintiff was transferred to this new position in June of 2000 – not 2004.

admissions, began long before Plaintiff contacted the EEO counselor. *See* Def.'s Mem. at 12–13, Def.'s Reply at 7–8.

In any event, it is undisputed that on September 3, 2004, Plaintiff filed a formal complaint with the Department of the Interior's EEO Office, in which Plaintiff complained of discrimination based upon a failure to accommodate her religious beliefs. Def.'s Stmt. ¶ 3; Pl.'s Stmt. ¶ 3; Am. Compl. ¶ 11. At some later unspecified time, Plaintiff also added a claim for retaliation to her EEO complaint. *See* Def.'s Mem., Ex. 2 (DOL Acceptance of Claims Letter); Am. Compl. ¶ 11–17. *See also* Def.'s Stmt. ¶ 3. Plaintiff's EEO Complaint proceeded to the Equal Employment Opportunity Commission ("EEOC"), and on September 18, 2007, an Administrative Judge issued a final decision finding that Defendant had discriminated against Plaintiff by denying her request for a religious accommodation, but that Defendant had not retaliated against Plaintiff based on her protected EEO activity. *See* Def.'s Mem., Ex. 3 (Final Agency Order). The EEOC awarded damages to Plaintiff, which Defendant paid in December of 2007. Def.'s Stmt. ¶ 5.

Plaintiff filed the instant action on January 1, 2008. Her Amended Complaint alleges two claims of retaliation in violation of Title VII – one based upon the same incidents on which she filed her 2004 EEO complaint, and another based upon an allegation that she was retaliated against in January of 2008 when Defendant refused to assign her to a light duty work position upon returning from an extended medical leave of absence. Am. Compl. ¶ 22. On June 22, 2009, this Court issued an order granting Defendant's motion to dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(6). *Payne*, 628 F. Supp. 2d at 52. The United States Court of Appeals for the District of Columbia Circuit affirmed this Court's decision in part and reversed in part. 619 F.3d 56. Specifically, the Court of Appeals affirmed this Court's dismissal

of Plaintiff's second retaliation claim regarding Defendant's refusal to provide her with light duty work due to Plaintiff's failure to exhaust her administrative remedies before initiating civil suit, *id.* at 65–66, and reversed this Court's dismissal of Plaintiff's first retaliation claim, *id.* at 59–65.  Now pending before the Court is Defendant's [29] Motion for Summary Judgment on Plaintiff's surviving retaliation claim.

### III.  SCOPE OF THIS ACTION

Due to the rather ambiguous framing of the Amended Complaint, the Court must begin by delineating the boundaries of Plaintiff's claims.  First, the Court notes that, in amending her complaint, Plaintiff changed the caption for Count One – the sole count asserted – to read "Discrimination and Retaliation," *see* Am. Compl. at 6, where previously it had read only "Retaliation," *see* Compl., ECF No. [1] at 6.  Plaintiff, however, did not add an additional count to her complaint or provide any additional facts in support of her new discrimination claim.  *See generally* Am. Compl.  Moreover, Plaintiff, in her briefing on the instant motion, expressly states that she does not in fact assert a separate discrimination claim.  *See* Pl.'s Opp'n at 2–3 ("Ms. Payne is not pursuing a claim for discrimination[.]").  Furthermore, as the only facts included in the Amended Complaint that arguably support a claim of discrimination are identical to those underlying the religious discrimination claim which she asserted in her EEO Complaint, *see generally* Am. Compl., the Court understands that Plaintiff's Amended Complaint does not include a separate claim for discrimination in violation of Title VII.

Second, although Plaintiff's Amended Complaint does not assert a separate count alleging a hostile work environment claim, it does contend, as part of the retaliation claim that Defendant "subjected [Plaintiff] to a hostile work environment" by engaging in the various alleged retaliatory actions.  Am. Compl. ¶ 22.  Defendant argues that, to the extent Plaintiff is

asserting a separate hostile work environment claim, such claim must fail both because Plaintiff did not initiate a claim for hostile work environment at the administrative level and because she cannot establish a *prima facie* hostile work environment claim.   *See* Def.'s Mem. at 8–12. Plaintiff's opposition nowhere addresses this argument.   *See generally* Pl.'s Opp'n.   Nor does it even discuss the legal standards governing hostile work environment claims; rather, Plaintiff states very clearly that "[t]his is a claim for retaliation" based upon specifically enumerated, discrete incidents.   *See* Pl.'s Opp'n at 1–3.   "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997); *Stephenson v. Cox*, 233 F. Supp. 2d 119, 121 (D.D.C. 2002)), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004). Accordingly, insofar as the Amended Complaint could be construed to assert a hostile work environment claim on the basis of retaliation, Plaintiff has abandoned such claim.[5]

---

[5] Further, the Court agrees with Defendant that any hostile work environment claim in this case would fail on the merits because it would necessarily be based upon precisely the same discrete acts Plaintiff has relied upon in asserting her retaliation claim, and Plaintiff has failed to proffer any support for a finding, as is required for hostile work environment claims, that these acts "permeate[d] the workplace with 'discriminatory [or retaliatory] intimidation, ridicule, and insult' that was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993) (quoting *Meritor Sav. Bank, FSB*, 477 U.S. 57, 65, 67 (1986)).  *See also Lester v. Natsios*, 290 F. Supp. 2d 11, 31–32 (D.D.C. 2003) (noting that "discrete acts constituting discrimination or retaliation claims … are different in kind from a hostile work environment claim" and that accordingly, "it is not at all clear that mere reference to alleged disparate acts of discrimination … can ever be transformed, without more, into a hostile work environment claim").  Because the Court finds that Plaintiff has conceded, and in any event would lose on the merits, on a hostile environment claim, it need not reach Defendant's administrative exhaustion argument.

Having unscrambled the pleading as it now stands, the Court shall turn to the single count remaining in this matter, retaliation in violation of Title VII.   While Plaintiff's Amended Complaint alleges several experiences Plaintiff had during the course of her employment with Defendant, her opposition brief helpfully clarifies upon which of those incidents Plaintiff's retaliation claim relies.   Specifically, Plaintiff asserts that after she made her January 2004 formal request to Chief Illige for leave on Sundays so that Plaintiff may attend church services, Defendant retaliated against her when:

(1) Plaintiff's supervisor, Mr. Madison, repeatedly told her that Defendant would never give her Sundays off because Defendant was trying to "get rid" of or terminate her;

(2) Mr. Madison angrily confronted her and told her that the one thing he did not like was "a lying ass Christian woman";

(3) Defendant changed her duties from a mixture of interpretive duties and maintenance duties to solely maintenance duties;

(4) Defendant required Plaintiff to account for every minute of her work day and assigned her duties for each minute of the work day when previously Plaintiff had simply been given a list of tasks to be completed each day;

(5) Mr. Madison required Plaintiff to get down on her hands and knees and scrub wax off of Defendant's floors;

(6) Mr. Madison required Plaintiff to climb a ladder with a bucket and wash each blind in Defendant's offices with window blinds with a wet towel daily, despite that she was one hundred pounds overweight; and

(7) Plaintiff's supervisors refused to immediately call 911 when Plaintiff's back went out and Plaintiff was suffering an asthma attack at work.

Pl.'s Opp'n at 1–2.  *See also* Am. Compl. ¶¶ 9, 12, 13, 16.[6]  Further, Plaintiff contends that the heavy work load and mistreatment imposed upon her caused her to feel demeaned and

---

[6] Count I of the Amended Complaint also asserts that Plaintiff was retaliated against when Defendant "issued her a lower performance appraisal." Am. Compl. ¶ 22.  However, because Plaintiff has not pointed to any evidence supporting this allegation and fails entirely to discuss it

embarrassed and to suffer permanent injury to her back, which ultimately required back surgery. Pl.'s Opp'n at 2, 5.

## IV.  DISCUSSION

Title VII's anti-retaliation provision makes it unlawful for an employer to "discriminate against any of his employees or applicants for employment ... because [the employee or applicant] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee or applicant] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).  Title VII claims are assessed pursuant to a burden-shifting framework initially set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). As the D.C. Circuit has explained:

> Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the two. If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its actions. If the employer does so, the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer retaliation from all of the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of retaliation.

*Jones v. Bernanke*, 557 F. 3d 670, 677 (D.C. Cir. 2009) (citations and quotations omitted).

In his briefing on the instant motion, Defendant has neither denied nor offered a legitimate, non-retaliatory reason for the alleged conduct.  *See generally* Def.'s Mem.; Def.'s Reply.  Accordingly, the focus of the Court's consideration shall be whether, viewing the facts in a light most favorable to Plaintiff, a reasonable jury could find that Plaintiff has satisfied each

---

in her opposition brief, *see generally* Pl.'s Opp'n, the Court understands Plaintiff as having abandoned this as a basis for her retaliation claim.

element of her *prima facie* case.  Defendant argues that Plaintiff cannot for this single reason: Each of the allegedly retaliatory actions of which Plaintiff complains began before Plaintiff engaged in protected activity.  Def.'s Mem. at 12–13.  For the reasons set forth below, the Court finds that Defendant has failed to demonstrate the absence of a genuine dispute of material fact on this issue, and summary judgment is accordingly denied.

## A. A Reasonable Jury Could Find that Several of the Alleged Retaliatory Acts Occurred After Plaintiff Engaged in Activity Protected by Title VII.

Regarding the first element of Plaintiff's *prima facie case* – that Plaintiff engaged in statutorily protected activity – the parties do not dispute that Plaintiff complained about Defendant's alleged religious discrimination to an EEO Counselor in May 2004 and that she filed her formal EEO complaint concerning the same on September 3, 2004.  Def.'s Stmt. ¶¶ 2–3. While the Defendant half-heartedly argues that the Court should consider the September 2004 date as the date on which Plaintiff commenced her protected activity, *see* Def.'s Mem. at 12, such argument holds no water, as "[i]t is well settled that Title VII protects informal, as well as formal, complaints of discrimination."  *Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007) (finding that employee engaged in "protected activity" as required to establish prima facie case of retaliation under Title VII when she first contacted EEO Counselor to complain of workplace discrimination, and again when she declined the agency's offer of resolution and expressed her intention to proceed with a formal complaint).  Plaintiff, to the contrary, maintains that her protected activity dates back to as early as January 2004, when she wrote the letter to Chief Illige requesting permission to take leave on Sundays to attend church.  Pl.'s Opp'n at 7–8. However, this Court agrees with Defendant in finding that a request for leave for purposes of religious observance, standing alone, does not constitute protected activity as defined by Title VII.  *See* Def.'s Reply at 5.

12

To be sure, Title VII's anti-retaliation provision is not limited to administrative complaints, as it also protects a plaintiff's "oppos[ition]" to "any practice made an unlawful employment practice" by the statute, *see* 42 U.S.C. § 2000e–3(a). However, for an exchange to constitute "protected activity," the employee "must in some way allege unlawful discrimination." *Broderick v. Donaldson*, 437 F. 3d 1226, 1232 (D.C. Cir. 2006). Here, Plaintiff's January 2004 letter is no more than a "request" for greater flexibility in her Sunday schedule so that she "may exercise [her] religious observance." Pl.'s Opp'n, Ex. B (Selected EEOC Record Exhibits), at 76. Although Plaintiff mentions the purpose of her leave – to attend church – she nowhere "opposes," complains of, or even mentions Defendant's prior refusals of this request; nor does she state anything to indicate that she would consider the failure to grant her leave request to be discriminatory. *See id.* While Plaintiff vaguely asserts in her counterstatement to Defendant's facts that she "protested discriminatory treatment from her supervisors from January 2004 through September 2004," Pl.'s Stmt. ¶ 2, because she fails to identify even a single example of her "protest[s]," the Court declines to find that any conduct prior to Plaintiff's May 2004 contact with an EEO counselor amounts to protected activity within the meaning of Title VII.[7] *See Dist.*

_____

[7] In support of her argument that the Court should view her January 2004 written request to constitute protected activity, Plaintiff cites to the EEOC Compliance Manual, which includes in a list of examples of protected activity "requesting … religious accommodation." EEOC Compliance Manual § 8 (2006). While the Compliance Manual possesses persuasive value as an agency's interpretation of a federal statute that it is charged with enforcing, the manual is neither subject to public notice and comment rulemaking nor controlling upon the courts, and is entitled to deference only insofar as it has the "power to persuade." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). Here, because the plain language of Title VII requires "oppos[ition]," 42 U.S.C. § 2000e–3(a), and Plaintiff has not cited a single case within this jurisdiction suggesting that a request for religious accommodation falls within the purview of Title VII's definition of protected activity, the Court declines to adopt Plaintiff's suggestion that her straightforward request for leave on Sundays so that she could attend Church, without more, constitutes statutorily protected activity. *Compare Weng v. Solis*, 842 F. Supp. 2d 147 (D.D.C. 2012) (Retaliation in response to request for accommodation of a disability can be basis for liability under Rehabilitation Act); *DuBerry v. Dist. of Columbia*, 582 F. Supp. 2d 27, 37 (D.D.C. 2008)

*Intown Props. Ltd. P'ship v. Dist. of Columbia*, 198 F.3d 874, 878 ("[T]he [C]ourt must assume

the truth of all statements proffered by the non-movant *except for* conclusory allegations lacking

any factual basis in the record.") (emphasis added).

Having resolved this legal dispute, the Court shall now address the factual disputes in

connection with Plaintiff's protected activity.  The crux of Defendant's argument is this:

> Even if the Court were to use the May contact with the EEO counselor as the
> beginning of Plaintiff's protected activity period, Plaintiff's claim still fails.
> This is because, by Plaintiff's own admission, her supervisors began their
> alleged mistreatment long before Plaintiff even sought counseling.  As such, the
> supervisors' alleged mistreatment necessarily could not be retaliatory.

Def.'s Mem. at 12.  For obvious reasons, Defendant is entirely correct that a plaintiff cannot base

a retaliation claim on events that took place prior to the time she first engaged in EEO activity.

*See Lewis v. Columbia*, 653 F. Supp. 2d 64, 79 (D.D.C. 2009) ("The fact that the alleged

retaliatory actions preceded the protected activity precludes a determination that the protected

activity caused the defendant to retaliate against the plaintiff.").  Viewing the facts alleged in the

light most favorable to Plaintiff, the record shows that the first three of Plaintiff's claimed seven

retaliatory actions occurred before Plaintiff initiated her EEO activity in May 2004.  *See* Pl's

Opp'n at 4 (stating that Mr. Madison's comments that Defendant would never give her Sundays

off and was trying to "get rid" of her began in 2002 and 2003) (citing Pl.'s Ex. A (EEOC

Hearing Transcript), 22–23); Pl's Ex. A (EEOC Hearing Transcript) (Plaintiff's testimony

indicating that among the incidents which led her to seek EEO counseling was Mr. Madison

calling her a "lying ass Christian woman"); Pl.'s Ex. B (Selected EEOC Record Exhibits), at 81

(May 24, 2004 letter of grievance complaining about prior change of duties).  Indeed, Plaintiff

expressly concedes as much.  *See* Pl's Opp'n at 3 ("[A]fter Plaintiff filed a claim with an EEO

---

("Requests for [disability] accommodation are 'protected activities' within the meaning of the
[Americans with Disabilities Act]").

counsel, [Defendant] took the actions in items 4 through 7 [ ] against her."); *id*. at 8 (acknowledging that actions (1) and (2) took place "before May 2004"). For this reason, the Court shall not consider Plaintiff's pre-May 2004 allegations – specifically, the above-numbered actions (1), (2), and (3) – when analyzing the merits of her retaliation claim.

Defendant presses for more, contending that *all* of the complained about conduct, by Plaintiff's own admission, began prior to her May 2004 contact with the EEO counselor. Defendant's factual backing for such argument is tenuous at best. Relying exclusively on a three page excerpt from Plaintiff's deposition transcript, Defendant submits that Plaintiff herself testified that her change in duties, the minute-by-minute schedule, and the instructions to get on her hands and knees to clean the floor and climb a ladder to clean the blinds had all begun upon her return to work on December 31, 2003, after an approximately six month absence due to a back injury, long before Plaintiff's EEO activity.[8] Def.'s Mem. at 12–13 (citing Def.'s Mem, Ex. 1 (Payne Dep.), 79:21–81:17); Def.'s Reply at 7–8 (quoting from Def.'s Mem, Ex. 1 (Payne Dep.), 80–81). Upon an independent review of the deposition testimony cited by Defendant, this Court declines to find that a reasonable fact-finder must necessarily reach this same conclusion. Although Plaintiff responded affirmatively to counsel's general inquiry as to whether her duties changed upon her return in January 2004, the surrounding testimony reflects significant confusion as the timeline of events, and within the same line of questioning, Plaintiff had initially and unequivocally testified that her duties increased, she had to scrub the floor on her knees and climb a ladder to clean the blinds, and that "everything started changing" "after [she] went to EEO." Def.'s Mem., Ex. 1 (Payne Dep.), 79–81. Accordingly, this Court finds that the

---

[8] It is undisputed that in April of 2002, Plaintiff cracked a disk in her back and did not return to work until December 31, 2003. Def.'s Stmt. ¶ 1; Pl.'s Opp'n at 4 (citing Ex. A (EEOC Hearing Transcript), at 25–27).

"materials cited to [by Defendant] do not establish the absence … of a genuine dispute" on the key question as to the timing of Defendant's alleged actions.  FED. R. CIV. P. 56(c)(1)(B).

Furthermore, the evidence presented by Plaintiff in opposition – specifically, selections from the EEOC administrative hearing transcript and exhibits – provides more than sufficient factual content from which a reasonable jury could conclude that Defendant did not take actions (4) through (7) until after Plaintiff met with the EEO counselor in May 2004.  *See*, *e.g.*, Ex. B (Selected EEOC Record Exhibits), at 88 (Memorandum listing Plaintiff's Work Assignments as of Fiscal Year 2003) & 89–95 (October 1, 2004 Memorandum attaching daily work schedule, assigning duties in fifteen, thirty, and forty-five minute increments); Ex. A (EEOC hearing Transcript), at 52:14–54:15 (Plaintiff testified at administrative hearing that Mr. Madison first ordered her to get down on her hands and knees to scrub the floor and climb a ladder to wash vertical blinds in July 2004); *id*., at 46–51 (Plaintiff testified at administrative hearing that on September 17, 2004, Mr. Madison and Chief Illige refused to promptly call 911 when she was having an asthma attack and her back went out).

In light of the foregoing facts presented by Plaintiff and Defendant's own rather paltry evidentiary showing, the Court finds that key factual disputes remain regarding the timing of the alleged retaliatory acts, requiring resolution by a fact-finder who can take into account factors such as witness credibility.

**B.  A Reasonable Jury Could Find the Alleged Retaliatory Acts to be Materially Adverse.**

Continuing on to the second element of Plaintiff's *prima facie* retaliation claim – that she suffered a materially adverse action by her employer, the Court notes that Defendant nowhere addresses this issue in his opening brief.  Indeed, it is not until on reply when Defendant argues that even if Plaintiff could establish that Defendant commenced the alleged actions against her

after she engaged in protected activity, Plaintiff has failed to tender sufficient evidence from which a reasonable jury could conclude that such actions were materially adverse.  Def.'s Reply at 9.  By waiting until his reply to raise this argument, Defendant has deprived Plaintiff of an opportunity to render a full and fair response, and the Court could exercise its discretion to discount Defendant's argument on this basis alone.  *See Baloch v. Norton*, 517 F. Supp. 2d 345, 348 (D.D.C. 2007), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court [may] either ignore those arguments … or provide the non-movant an opportunity to respond.").  Nevertheless, because Plaintiff bears the burden of establishing her *prima facie* case and did in fact address the question of materiality in her opposition memorandum, the Court shall address the issue here.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (Where the non-moving party "will bear the burden of proof at trial on a dispositive issue," the non-moving party bears the burden of production at the summary judgment phase to "designate specific facts showing that there is a genuine issue for trial[.]") (internal quotation marks omitted).

The Supreme Court clarified the meaning of a "materially adverse" retaliatory action in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).  The Court explained that Title VII's retaliation and discrimination provisions are not "coterminous," *id*. at 66, and that, unlike its prohibition against discrimination, Title VII's prohibition against retaliatory action is "not limited to" "actions that affect the terms and conditions of employment," *id*. at 63.  Rather, the anti-retaliation provision "extends beyond" "employment-related retaliatory acts and harm" to include any conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern*, 548 U.S. at 66, 68.  *See also Rattigan v. Gonazales*, 503 F. Supp. 2d 56, 75 (D.D.C. 2007) ("An adverse action in the

retaliation context may involve something short of what ordinarily would be considered a 'personnel action' (*e.g.*, denial of promotion, discharge, salary reduction), but a plaintiff nonetheless must point to an action that a "'reasonable employee would have found … materially adverse.'") (citations omitted).

Of course, a court must take care to "separate significant from trivial harms," as "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id*. at 67. Further, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id*. In the end, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. … [and] an act that would be immaterial in some situations is material in others" *Id.* at 69 (internal quotes and citations omitted). *See id.* ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children.")

Relatedly, "[c]ourts cannot examine whether any isolated action, on its own, qualifies as 'adverse.' Instead, courts must consider whether 'based upon the combined effect of ... alleged events, a reasonable worker could be dissuaded from engaging in protected activity.'" *Test v. Holder,* 614 F. Supp. 2d 73, 84 (D.D.C. 2009); *see also Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (considering plaintiff's proffered retaliatory actions both alone and in combination to determine whether they were materially adverse). In *Test*, the court found that the plaintiff had asserted a materially adverse action where the employer scheduled meetings at which the plaintiff could not attend, verbally assaulted him, undermined his authority, reduced his workload, locked him out of the building, issued him an unfavorable performance evaluation,

denied him a performance award, and refused to discuss an individual development plan with him.  614 F. Supp. 2d at 83–84.

Here, Defendant argues that, even when taking into account the combined effect of the alleged events, the complained about changes to Plaintiff's work conditions were "not so overwhelming, demeaning, or oppressive" as to constitute materially adverse action.  Def.'s Reply at 10.  Plaintiff counters that Defendant's mischaracterization of Plaintiff's allegations as simply a change in duties understates the harsh nature of Defendant's conduct and that the record establishes that Plaintiff was in fact subject to "inhumane" treatment that would dissuade any reasonable worker from exercising their Title VII rights.  *See* Pl's Opp'n at 9–10.  Construing the record most favorably to Plaintiff, the Court finds that a reasonable jury could conclude that each of the alleged post-May 2009 actions – specifically, the assignment of duties to Plaintiff for each minute of the work day; requiring Plaintiff to get down on her hands and knees and scrub wax off of the floors; requiring Plaintiff to climb a ladder with a bucket and wash each individual window blind in Defendant's offices with a wet towel every day; and Defendant's refusal to call 911 when Plaintiff's back went out and Plaintiff was suffering from an asthma attack at work – were materially adverse.

Ordinarily, changes in an employee's assignments or work-related duties, without more, do not constitute materially adverse action, *Allen v. Napolitano*, 774 F. Supp. 2d 186, 203 (D.D.C 2011), and an employee's general dissatisfaction with her supervisor is likewise insufficient to state a claim for retaliation.  *Taylor v. Mills*, __ F. Supp. 2d __, Civ. A. No. 101–1077, 2012 WL 4336236 at *19 (D.D.C. Sept. 24, 2012).  However, "[c]ourts have consistently recognized that there is a difference between being dissatisfied with one's work environment or being subject to bad management practice, on the one hand, and, on the other hand, the type of

constant, pervasive oversight of any employee's performance identified by a proactive search for minor infractions as a pretext for retaliatory harassment." *Id.* (internal citations and punctuation omitted). *See also Burlington Northern*, 548 U.S. at 69 ("Common sense suggests that one good way to discourage an employee … from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable."). Plaintiff offers sufficient evidence from which a jury could infer that the changes to her duties and the increase in monitoring of such duties by management were such that a reasonable employee in Plaintiff's position may have been deterred from engaging in Title VII protected activity for fear of similar reprisal.

Consider, for example, Plaintiff's orders to scrub the floors and wash the window blinds. According to Plaintiff's administrative hearing testimony, Mr. Madison had instructed her to scrub the floor on her hands and knees, in an area visible to the public, despite Plaintiff's protests and his awareness that she had recently returned to work after recovering from surgery to treat a cracked disk in her back and could not safely kneel on the floor, *see* Pl.'s Opp'n, Ex. A (EEOC Hearing Transcript), 52:7–20, 67:5–9, and likewise required her to climb a ladder with a bucket and rag to wash each Venetian window blind in Defendant's offices, one by one, on a daily basis, despite that that this had never before been included in her job duties, *id.* at 53:15–54:11. Further, Plaintiff testified that, on an unspecified number of occasions, upon completion of these tasks, she would return to Mr. Madison and ask if she "[did] it right," to which he would say no and require her to repeat the tasks over and again, and stand behind her as she did. *Id.* at 54:1–15, 64:19–65:5. A reasonable jury could conclude that such conduct would be degrading and humiliating to any reasonable employee. Further, if true, Plaintiff's testimony that Mr. Madison and Chief Illige simply "sat there watching" and "ignored her request" to immediately call 911

when her back when out and she suffered an asthma attack during a meeting, *id.* at 46–49, 101, 102, could certainly be found by a jury to be sufficiently adverse, especially when considered in conjunction with Plaintiff's proffered evidence of additional post-May 2009 harassing conduct on which her retaliation claim does not specifically rely, *see e.g.*, Pl.'s Opp'n, Ex. A (EEOC Hearing Transcript), 40–43 (testimony about incidents during which Mr. Madison insulted, publicly yelled at, and mocked Plaintiff); *id.* (testimony that Defendant required Plaintiff to complete a leave slip if she arrived late but did not require other staff to do so); *id.* at 55:13–56:2 (testimony that Mr. Madison called her upstairs several times consecutively and antagonized her about not cleaning the glass covering on his office phone, which caused her to leave the office upset, to fall down the stairs, and sprain her ankle 55:13-56:2); Def.'s Ex.1 (Payne Dep.), at 16:2–11 (same).

As this Court has previously observed, "[a]lthough employees must tolerate some amount of unprofessionalism from their supervisors, reasonable employees might be dissuaded from complaining about discrimination if they knew that doing so would subject them to continued harsh treatment from their supervisors and humiliation in front of their peers." *Wade v. Dist. of Columbia*, 780 F. Supp. 2d 1, 17 (D.D.C. 2011) (finding that genuine issue of material fact existed as to whether conduct of male patrol officer's supervisor during police department meeting, in which supervisor yelled at officer for insubordination and criticized his inability to meet deadlines in front of other employees, was a materially adverse action, precluding summary judgment on the officer's retaliation claim) (internal citation omitted).  *See also Pegues v. Mineta*, Civ. A. No. 04-2165, 2006 WL 2434936 (D.D.C. Aug. 22, 2006) (denying employer's motion to dismiss employee's retaliation claim, finding a possible adverse action where, *inter alia*, supervisors challenged every issue that the employee discussed at a public meeting, insulted

him by telling him to "collect urine samples," and scrutinized and altered his compensatory time for travel).

Here, Plaintiff claims that she not only felt demeaned and humiliated by Defendant's treatment, *see* Pl.'s Opp'n, Ex. A (EEOC Hearing Transcript), at 64:19–65:6, but also that she suffered back pain and injury resulting from Defendant's conduct. *See id.* 54:16–22; Def.'s Mem, Ex. 1 (Payne Dep.), at 15–17. While Defendant disputes the timing of the alleged events, *see supra* Part IV.A., he nowhere disputes their occurrence, nor does he provide a legitimate, non-retaliatory justification for the charged conduct. *See generally* Def.'s Mem.; Def's Reply. His conclusory assertion, without more, that the claimed actions were not sufficiently demeaning is insufficient to prevent submission of the issue of material adversity to a jury's judgment.

## C. A Reasonable Jury Could Find a Causal Connection between Plaintiff's Protected Activity and the Alleged Retaliatory Acts.

With regard to the final element of Plaintiff's *prima facie* case – the existence of a causal link between Plaintiff's statutorily protected activity and the alleged materially adverse actions – the Court finds that a reasonable jury could find that Plaintiff has indeed established such a causal connection. In the absence of any direct evidence of retaliatory motive, a plaintiff may demonstrate a causal connection between the protected activity and an adverse action based only on the temporal proximity where the plaintiff can show that "the employer had knowledge of the employee's protected activity, and that the adverse [ ] action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). Importantly, the cases that accept temporal proximity alone as sufficient evidence of causality consistently hold that the temporal proximity must by "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). ("Action taken (as here) 20 months later suggests, by itself, no causality at all."). Courts in this Circuit have generally accepted time periods of a few days up to a few months, and have

seldom accepted time lapses outside of a year in length.  *See Brodetski v. Duffey*, 141 F. Supp. 2d 35, 43 (D.D.C. 2001) (citing cases).

Presupposing, as established *supra*, Part IV.A, that a reasonable fact-finder could conclude that the last four of the seven incidents on which Plaintiff's claim relies occurred when Plaintiff alleges – specifically, the change in duties to include floor scrubbing and window blinds cleaning in July 2004, the asthma attack in September 2004, and the issuance of a minute to minute schedule in October 2004 – these incidents occurred within one to two months of Plaintiff's protected activities, respectively, the May 2004 informal counseling and September 2004 formal complaint.  Defendant offers no explanation as to why its actions should not be viewed as retaliatory.  Accordingly, in this case, temporal proximity alone shall suffice to require submission to a jury on the question of retaliatory intent.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has tendered sufficient evidence from which a reasonable fact-finder could conclude that she has established a *prima facie* case that Defendant retaliated against her in violation of Title VII based upon the following discrete actions:  requiring Plaintiff to account for every minute of her work day and assigning her duties for each minute of the work day when previously Plaintiff had simply been given a list of tasks to be completed each day; requiring Plaintiff to get down on her hands and knees to scrub Defendant's floors; requiring Plaintiff to climb a ladder with a bucket and wash each blind in Defendant's offices with a wet towel daily; and refusing to immediately call 911 when Plaintiff's back went out and Plaintiff was suffering an asthma attack at work.  Defendant has not advanced a legitimate, non-retaliatory reason for the alleged conduct, and therefore Plaintiff's *prima facie*

case is sufficient evidence for a jury to make a finding of retaliation.   Accordingly, the Court

shall DENY Defendant's [29] Motion for Summary Judgment.


Date:  October 21, 2012


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge